UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

CAROLYN LOVEJOY, ELIZABETH BUTLER,
CHRISTINA VILLAVICENCIO,

**NOTICE OF REMOVAL**

Plaintiff,

Case No. 10 Civ. _____

-against-

**CV 10 - 5748**

NEW YORK CITY DEPARTMENT OF EDUCATION,
ELIF GURE-PEREZ,

Defendants.

**WEINSTEIN, J.**

**AZRACK, M.J.**

------------------------------------------------------------------------ x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ DEC 10 2010 ★
BROOKLYN OFFICE

**TO:   THE UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF NEW YORK**

Defendant New York City Department of Education ("DOE"), by its attorney,

Michael A. Cardozo, Corporation Counsel of the City of New York, respectfully shows this

Court as follows:

1.      On or about November 15, 2010, the Office of the Corporation Counsel of

the City of New York was personally served with a Summons and the Complaint in the above-

entitled action, pending in the Supreme Court of the State of New York, County of Kings, Index

No. 27925/10, naming the DOE and Elif Gure-Perez defendants therein, and setting forth the

claims for relief upon which the action is based.  A copy of the Summons and Complaint is

annexed hereto as Exhibit "A."  As of this date, the individual defendant, Elif Gure-Perez, has

not yet been served.

2.      The above-captioned is a civil action of which the District Court has

original jurisdiction in that the complaint includes a cause of action which arises under the

Constitution and laws of the United States, pursuant to 28 U.S.C. § 1331.  This action is

therefore removable to the District Court without regard to the citizenship or residence of the parties, pursuant to 28 U.S.C. § 1441(b).

3.      Plaintiffs bring this lawsuit claiming, *inter alia*, that defendants violated the Family Medical Leave Act in violation of 42 U.S.C. §1981 and discriminated against plaintiffs for exercising their First Amendment rights. See Exhibit "A" ¶1.

4.      This Notice of Removal is timely because it is being filed by DOE within thirty days (30) days of its receipt of the initial pleading. See 28 U.S.C. § 1446(b).

5.      The individual defendant Elif Gure-Perez has not yet been served but she have consented to removal of this action to the District Court.

6.      Defendant DOE will promptly file a copy of this Notice of Removal with the Clerk of the state court in which the action has been pending.

7.      Defendant DOE is unaware of any previous application for the relief requested herein.

**WHEREFORE** defendant DOE respectfully requests that the above-captioned action be removed from the Supreme Court of the State of New York, County of Kings, to the United States District Court for the Eastern District of New York.

Dated:    New York, New York
              December 10, 2010

                                  MICHAEL A. CARDOZO
                                  Corporation Counsel of the
                                    City of New York
                                  Attorney for Defendant DOE
                                  100 Church Street, Room 2-169
                                  New York, New York 10007
                                  (212) 788-0897
                                  iklepfis@law.nyc.gov

                By:                        

                                  ISAAC KLEPFISH
                                  Assistant Corporation Counsel

TO:    LAW OFFICE OF K.C. OKOLI, P.C.
        Attorney for Plaintiff
        330 Seventh Avenue, 15th
        New York, New York 10007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
--------------------------------X
CAROLYN LOVEJOY, ELIZABETH BUTLER,          Index No.   *2010-043728*
CHRISTINA VILLAVICENCIO,

                         Plaintiffs              *27925/10*


     -against-



NEW YORK CITY DEPARTMENT OF EDUCATION,
ELIF GURE-PEREZ

                    Defendants
--------------------------------X                    **COMPLAINT**

     Plaintiffs, CAROLYN LOVEJOY, ELIZABETH BUTLER and CHRISTINA
VILLAVICENCIO, by their attorneys, LAW OFFICES OF K.C. OKOLI,
P.C., complaining of the defendants, allege as follows:


                         **JURISDICTION**

     1.    This is an action for injunctive relief and money
damages.  This action arises under the Administrative Code of the
City of New York, § 8-107(7), the Family Medical Leave Act, and
the First Amendment to the Constitution of the United States.


                         **PARTIES**

     2.    At all times relevant to this action, Plaintiff,
CAROLYN LOVEJOY, ("LOVEJOY"), was an employee of the defendant
NEW YORK CITY DEPARTMENT OF EDUCATION ("DOE"). LOVEJOY is an

                              1

African-American female.

3.     At all times relevant to this action, Plaintiff, ELIZABETH BUTLER ("BUTLER"), was an employee of the defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("DOE"). BUTLER is an African-American female.

4.     At all times relevant to this action, Plaintiff, CHRISTINA VILLAVICENCIO ("VILLAVICENCIO"), was and still is an employee of the defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("DOE"). VILLAVICENCIO is a Hispanic female.

5.     DOE is a department of the City of New York, organized and existing under and by virtue of the laws of the State of New York. DOE has offices in the Borough of Brooklyn, County of Kings, City of New York.

6.     At all times relevant to this action, defendant ELIF GURE-PEREZ ("GURE") was the principal of PS 316, in Brooklyn, New York. Upon information and belief, GURE is Turkish.


**<u>ALLEGATIONS</u>**

7.     LOVEJOY was employed by DOE for 23 years. She worked for 18 years at PS 316 under three principals, her last position being as a Parent Coordinator. In June 2010, LOVEJOY was forced to resign her position as Parent Coordinator at PS 316.

8.     BUTLER was employed as a Teacher for 31 years, 27 years of which she spent at PS 316 under six different principals. In

June 2009, BUTLER was forced to retire from her teaching job.

9. VILLAVICENCIO was employed as a Teacher by DOE in November 1993, and appointed a probationary Assistant Principal at PS 316 in June 2008. On or about March 26, 2009, GURE gave VILLAVICENCIO her first "U" rating in 15 years as an employee of DOE, with notice of discontinuance of her probationary Assistant Principal position.

10. GURE was hired as a principal at PS 316 in August 2008.

11. Prior to the arrival of GURE as principal of PS 316, LOVEJOY, BUTLER and VILLAVICENCIO did not have any work-related problems at PS 316.


## ELIZABETH BUTLER

12. At her first faculty conference at PS 316, on August 28, 2008, GURE read a story out loud to the staff. GURE concluded the story with, 'The teacher said, "OK let's settle down class and get back to reading Old Black Joe"'.

13. Most of the teachers who heard this felt offended by the racial stereotype represented by the school principal reading aloud "Old Black Joe" in the classroom in 2008. Concerned for their positions, they said nothing to GURE.

14. In or about September 2008, in a conversation between GURE and VILLAVICENCIO, GURE informed her that she had gone shopping with her sister who was visiting from Turkey. GURE

3

further informed VILLAVICENCIO that she had told her sister that she was working in an all-Black school and that the teachers were all Black. GURE then said, "I bought me a bright orange blouse to wear to school since I know Black people like loud colors. Do you think the teachers would like it?"

15. During a meeting between GURE, VILLAVICENCIO and Assistant Principal Martin Williams, GURE commented that she planned to "marginalize Mrs. Butler's work in the school".

16. On or about October 9, 2008, BUTLER went to seek clarification from GURE over a request to include two teachers in BUTLER's professional development program. GURE said to BUTLER, "If Phyllis (Teacher Center Field Liaison) has any problems with it, tell her to call me".

17. Shortly thereafter in November 2008, GURE went on maternity leave and did not return to PS 316 until the end of January 2009.

18. After GURE's return from maternity leave, she communicated with BUTLER mostly through Martin Williams, an Assistant Principal.

19. Upon her return from maternity leave, GURE began scheduling a lot of professional development activities in the Teacher Center at the school without consulting with BUTLER, even though this was BUTLER's area of responsibility. GURE completely excluded BUTLER from the decision-making process.

20. Outside consultants were brought into the Teacher Center by GURE for professional development sessions without BUTLER's input. At times, after returning from her classroom sessions to the Teacher Center, BUTLER would find these outside consultants apologetically setting up for, or engaged in professional development sessions with teachers.

21. All the six outside consultants involved in these professional development sessions were Caucasians.

22. On January 29, 2009, GURE sat down to have her only meeting with BUTLER about scheduling and other work-related matters. At said meeting, GURE gave BUTLER a project which she said should be treated as priority.

23. After two days of intense work on the aforesaid project, Mr. Martin Williams instructed BUTLER that GURE wanted BUTLER to revert to working with teachers.

24. Following this communication from Mr. Williams, a number of things happened. UFT Chapter Leader Damali Gray shared with BUTLER a conversation she had with GURE during which GURE said, "If Mrs. Butler thinks she is going to sit on her ass and not help the teacher, she has another thing coming! I'm not Tracey Collins".

25. When BUTLER asked Ms. Gray what the statement from GURE meant, Ms. Gray responded that she did not know.

26. A meeting was scheduled and held on February 10, 2009,

5

between GURE, BUTLER and Phyllis Walker, at which the parties were to discuss any concerns, needs or ideas which GURE may have about the Teacher Center operations. GURE did not express any needs, ideas or concerns at the meeting other than to say, "I will have to see the impact that Teacher Center makes on student achievement".

27. On or about March 11, 2009, GURE was overheard in a telephone conversation with Phyllis Walker in which GURE said, "Phyllis I want to keep the Teacher Center, I do not want Mrs. Butler in the Teacher Center". A day earlier, GURE was also overheard talking to someone on the telephone during which she made reference to Mrs. Butler "sitting in the Teacher Center with her old ass not helping" some teacher.

28. On or about March 18, 2009, Ms. Walker informed BUTLER that GURE was requesting a change in staff of the Teacher Center and wanted to interview some candidates. At this point, it was clear that GURE did not want to retain BUTLER as the Teacher Center Professional Development Specialist.

29. Damali Gray was in GURE's office when GURE was reviewing resumes of prospective teaching candidates who appeared to be all Caucasians. Ms. Gray observed to GURE that the names appeared to be all Whites. In response, GURE said "They're quite Waspy right?" to which Ms. Gray nodded affirmatively.

30. Damali Gray also shared with BUTLER her view that it

6

was quite evident that GURE was giving the senior staff at PS 316 a hard time, and had told Ms. Gray that the most senior teacher, "Mrs Butler will be retiring".

31. This comment came as a surprise to BUTLER who, at the time, was not thinking of retiring and had never mentioned to GURE that she intended to retire.

32. It later appeared that GURE was using bare knuckle tactics to force older experienced employees into retirement or out of PS 316. On one occasion, GURE said, "I want the old teachers to retire because I want to hire young teachers who have babies to support."

33. In the afternoon of May 13, 2009, LOVEJOY was observed coming out slowly from one of the stalls of the first floor bathroom at PS 316, visibly upset, crying and trembling. LOVEJOY shared with BUTLER the fact that GURE had belittled her in GURE's office and used the word "nigger" in reference to LOVEJOY.

34. On June 15, 2009, GURE gave out the teachers' assignment sheet for the next year and there was no position listed for Professional Development neither was BUTLER's name included on the staff list.

35. On June 17, 2009, Phyllis Walker informed BUTLER of the decision to officially close down the Teacher Center site at PS 316, and asked BUTLER to prepare the Center for closing.

36. In light of the foregoing and the additional fact that

7

there were not many openings available to BUTLER, BUTLER was forced to file for retirement on June 22, 2009.

37.  On June 25, 2009, while BUTLER was still getting the Teacher Center ready for closure as instructed, GURE came into the Center. Some words were exchanged, telephone calls made, after which GURE said to BUTLER, "Get all of your personal things out of this room. You or no one else will be allowed to come in here to get anything. I'm changing the locks tonight".

38.  Upon information and belief, after BUTLER's forced retirement, a younger White female was assigned the professional development position at PS 316.


## CAROLYN LOVEJOY

39.  Prior to the arrival of GURE as principal of PS 316, LOVEJOY had no work-related problems at PS 316, and looked forward to going to work there as a Parent Co-ordinator.

40.  Since her arrival at PS 316, GURE has systematically created a hostile work environment for older minority employees, including LOVEJOY.

41.  Between February 2009 and May 2009, GURE had constantly belittled and degraded LOVEJOY, causing LOVEJOY's health to deteriorate.  GURE had even called LOVEJOY nigger. On one occasion, GURE said of LOVEJOY behind the closed door of GURE's office, "I'm getting rid of you; you are not fit for my school".

8

42.   When LOVEJOY asked for flex time, GURE responded that LOVEJOY was lazy and wanted flex time to stay home and sleep because she was "too old, tired and useless".

43.   GURE told LOVEJOY that LOVEJOY should start looking for another job since she, GURE, wanted "young and fresh blood" in her school.  She state to LOVEJOY that LOVEJOY did not fit the profile for her school in September.

44.   GURE was always speaking in terms of "you people" or "you all". As an example, GURE would say, "You all are too old and lazy" or "The laziness and incompetence of you people make me sick".

45.   LOVEJOY was subjected to excessive write-ups, harassed, screamed at, and ridiculed in front of parents, advocates and staff. GURE stripped LOVEJOY of her dignity and self-esteem.

46.   After VILLAVICENCIO had been transferred to PS 191, LOVEJOY overheard many telephone conversations between GURE and the principal of PS 191, in which they discussed what they would do to VILLAVICENCIO.

47.   For the first time in her life, LOVEJOY was diagnosed with psychological illness, including anxiety and depression.

48.   LOVEJOY took a medical leave to get better, and there was some improvement in her health condition.

49.   GURE had openly stated that she did not want LOVEJOY at PS 316, and threatened that if LOVEJOY did not resign

9

voluntarily, she would either fire her or force her resignation.

50.  As LOVEJOY's July 1, 2010, date of return to work was approaching, LOVEJOY wrote to DOE on May 18, 2010, expressing her genuine fear of what would happen to her if she were to return to work under GURE's supervision. LOVEJOY requested to be reassigned out of GURE's supervision.

51.  DOE did not even acknowledge LOVEJOY's request, thus leaving LOVEJOY without any good options: LOVEJOY either had to return to PS 316 under GURE to suffer a mental breakdown, or she had to resign her job to keep her sanity. No human being should be subjected to such indignity.

52.  LOVEJOY had no choice but to resign and she submitted her resignation before July 1, 2010.

### CHRISTINA VILLAVICENCIO

53.  VILLAVICENCIO applied for the principal position at PS 316 at the same time that GURE applied for same position.

54.  Upon information and belief, VILLAVICENCIO was favored by the parent for the principal position but GURE was eventually selected over VILLAVICENCIO.

55.  On or about August 18, 2008, GURE informed VILLAVICENCIO that her position as an assistant principal at PS 316 may be eliminated due to budget constraints.

56.  After her selection but before her formal appointment

10

as principal at PS 316, GURE had indicated to staff members that she would be going after the assistant principals, the PTA executive board and the Parent Coordinator, LOVEJOY, when she got appointed.

57.   Shortly after GURE was appointed as Principal, GURE instructed VILLAVICENCIO, as Assistant Principal, to aggressively supervise "older staff members" at PS 316 to shake them up.

58.   During meetings with her Assistant Principals, Martin Williams and VILLAVICENCIO, GURE would say to them, "You have to crack that whip. So you think these teachers are entitled to work in this building?"

59.   After VILLAVICENCIO had observed two teachers, Ms. McKie and Ms. Gordon, and rated them satisfactory, GURE directed VILLAVICENCIO to do another observation of these teachers. Both teachers are senior teachers of over 40 years of age.

60.   GURE had told VILLAVICENCIO to use "fear" and "intimidation" tactics against Ms. Moses, a Pre-K teacher and tell her that the next year she would be moved from her Pre-K assignment to Grade 3, all the way up on the second floor of the building. GURE further stated, "Maybe this will make her retire". Ms. Moses has medical problems with her knee and sometimes walks with a cane.

61.   GURE had also told Martin Williams, in the presence of VILLAVICENCIO, "The principal's position is a privileged

11

position" as she looked at Mr. Martin from head to toe with derision.

62.  VILLAVICENCIO suggested to GURE that it would be fair to give these staff members - all minorities -  a little time before they were formally observed and/or evaluated.

63.  Once GURE realized that VILLAVICENCIO would not be part of her ploy to get rid of older minority staff, she began to nitpick VILLAVICENCIO's work. GURE threatened to get rid of VILLAVICENCIO.

64.  On or about January 20, 2009, after a contentious meeting with the PTA executive board, GURE stormed down to the main office with Mr. Williams and pulled out VILLAVICENCIO's November time card and said, "See she [Villavicencio] did not punch in for the month of November". Later that evening, Mr. Martins informed VILLAVICENCIO that GURE was clearly on a witch-hunt of her and the PTA executive board.

65.  On or about January 21, 2009, GURE informed VILLAVICENCIO of an allegation of "theft of services" against her, but did not identify the source of this allegation. GURE later told VILLAVICENCIO that the allegation was unsubstantiated. Nonetheless, GURE began creating negative paperwork for VILLAVICENCIO.

66.  Even though the allegation of "theft of services' was unsubstantiated, GURE told VILLAVICENCIO that her investigation

12

showed that VILLAVICENCIO did not clock for the month of November 2009. GURE's verbal instruction contradicts her written account which was placed in VILLAVICENCIO's file.

67.   On or about February 6, 2009, in the presence of Martin Williams, GURE assailed VILLAVICENCIO for having "very poor supervisory skills" and accused her of not having the "backbone to write up teachers". GURE went on to say, "You have to carry the whip", simulating the whipping motion.

68.   On February 9, 2009, GURE placed the first disciplinary letter in VILLAVICENCIO's personnel file after 15 years of service with DOE.

69.   On or about February 13, 2009, GURE told VILLAVICENCIO, "If I were you, I would start looking someplace else to work". GURE constantly threatened VILLAVICENCIO, telling her that her services may be discontinued at the end of the school year with an unsatisfactory rating.

70.   In a single day, on March 17, 2009, GURE placed seven (7) disciplinary letters in VILLAVICENCIO's personnel file.

71.   On March 26, 2009, GURE gave VILLAVICENCIO the very first "U" (Unsatisfactory) rating in her career with DOE, together with a notice of discontinuance of VILLAVICENCIO's probationary service as an assistant principal.

72.   On April 1, 2009, DOE reassigned VILLAVICENCIO to PS 191 effective April 2, 2009.

13

73.  Despite VILLAVICENCIO reassignment out of PS 316, GURE used her friends and enablers within DOE to continue to hound and harass VILLAVICENCIO who was diagnosed with anxiety and depression.

74.  VILLAVICENCIO has lost her title as Assistant Principal and has suffered a salary reduction as a result of the foregoing.

## AS AND FOR A FIRST CAUSE OF ACTION

75.  Plaintiffs repeat and re-allege each and every allegation of paragraphs "1" through "74" above as if specifically set forth herein.

76.  Defendants unlawfully discriminated against LOVEJOY by reason of her race and age, and constructively discharged her.

77.  By reason of the foregoing, LOVEJOY has suffered loss and damage.

## AS AND FOR A SECOND CAUSE OF ACTION

78.  Plaintiffs repeat and re-allege each and every allegation of paragraphs "1" through "77" above as if specifically set forth herein.

79.  GURE unlawfully retaliated against LOVEJOY by refusing to let her take an FMLA leave to recover her health, thus forcing LOVEJOY to utilize her accrued time.

80.  By reason of the foregoing, LOVEJOY has suffered loss

14

and damage.

### AS AND FOR A THIRD CAUSE OF ACTION

81.   Plaintiffs repeat and re-allege each and every allegation of paragraphs "1" through "80" above as if specifically set forth herein.

82.   Defendants unlawfully discriminated against BUTLER on account of her race and age, and forced her into involuntary retirement.

83.   By reason of the foregoing, BUTLER has suffered loss and damage.

### AS AND FOR A FOURTH CAUSE OF ACTION

84.   Plaintiffs repeat and re-allege each and every allegation of paragraphs "1" through "82" above as if specifically set forth herein.

85.   Defendants unlawfully discriminated against VILLAVICENCIO by reason of her race, reduced her salary and demoted her.

86.   By reason of the foregoing, VILLAVICENCIO has suffered loss and damage.

### AS AND FOR A FIFTH CAUSE OF ACTION

87.   Plaintiffs repeat and re-allege each and every allegation of paragraphs "1" through "72" above as if

15

specifically set forth herein.

88.   Defendants unlawfully retaliated against VILLAVICENCIO in violation of her rights under the First Amendment to the United States Constitution by reducing her salary, reassigning and discontinuing her probationary services as an assistant principal.

89.   By reason of the foregoing, VILLAVICENCIO has suffered loss and damage.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for the following reliefs against the defendants jointly and severally:

a)   On the First Cause of Action, $2,000,000.00 damages;

b)   On the Second Cause of Action, $2,000,000.00 damages;

c)   On the Third Cause of Action, $2,000,000.00 damages;

d)   On the Fourth Cause of Action, $300,000.00 damages;

e)   On the Fifth Cause of Action, $500,000.00 damages;

f)   Permanent injunction barring the defendants, by themselves, their servants and/or agents, from further discriminating or retaliating against VILLAVICENCIO;

g)   Reasonable Attorney's fees;

h)   Costs and disbursement of this action;

I)   Such further or other relief as the court may deem just and equitable.

16

Dated:      New York, New York
            November 11, 2010


                              LAW OFFICES OF K.C. OKOLI, PC
                              Attorneys for Plaintiff
                              CAROLYN LOVEJOY, ELIZABETH BUTLER,
                              CHRISTINA VILLAVICENCIO
                              330 Seventh Avenue, 15th Floor
                              New York, N.Y. 10001
                              (212) 564-8152

                     By:      _____
                              K.C. OKOLI, ESQ.


                              17

## DECLARATION OF SERVICE

**ISAAC KLEPFISH**, declares pursuant to 28 U.S.C. § 1746 and subject to penalty of perjury, that the following is true and correct:

1.    I am not a party to the above-captioned proceeding.

2.    I am employed by the New York City Law Department.

3.    On December 10, 2010, I caused the annexed Notice of Removal to be served upon the attorney for the plaintiffs herein by depositing a copy of such in a first class postpaid properly addressed wrapper; in a post office/official depository under the exclusive care and custody of the U.S. Postal Service, directed to said attorney at the address set forth below, that being the address designated for that purpose:

LAW OFFICE OF K.C. OKOLI, P.C.
Attorney for Plaintiff
330 Seventh Avenue, 15th  floor
New York, New York 10007

Dated:    New York, New York
          December 10, 2010

_____
ISAAC KLEPFISH
Assistant Corporation Counsel

- 4 -